Timothy J. Dance (11553)
Kristen J. Overton (16537)
**Snell & Wilmer L.L.P.**
15 West South Temple, Ste. 1200
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
Email: tdance@swlaw.com
      koverton@swlaw.com

*Attorneys for Recovery Land Holding, LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RECOVERY LAND HOLDING, LLC, a Utah limited liability company,<br><br>　　　Plaintiff,<br><br>vs.<br><br>CITY OF SOUTH OGDEN, and DOE DEFENDANTS I through X,<br><br>　　　Defendants. | **PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS ALTERNATIVE RULE 56(d) MOTION**<br><br>Case No. 1:17-cv-00152 PMW<br><br>Magistrate Judge Paul M. Warner |

Plaintiff Recovery Land Holding, LLC, also known as Brighton Recovery Center ("**Plaintiff**" or "**Brighton**"), through counsel, respectfully submits this Reply Memorandum in support of its Alternative Rule 56(d) Motion ("**Motion**") and states as follows:

## SUMMARY

Defendant City of South Ogden (the "**City**") ignores the plain text of Federal Rule of Civil Procedure 56(d), as well as the liberality with which such motions are granted, in its attempt to convince the Court that Brighton is not entitled to any discovery at all on its claims.

First, the City argues that Brighton is not entitled to conduct discovery related to the

City's intent in enacting Ordinance 16-20. But this argument ignores the fact that in raising disparate treatment claims, discriminatory intent is directly at issue, and Brighton is obligated to proffer evidence proving such intent. Discovery related to the City's discriminatory intent is therefore necessary.

Second, the City claims that there are no facts under which Brighton can recover on its disparate treatment claims. But this argument ignores the fact that Brighton can establish its disparate treatment claims via (1) evidence that the City passed Ordinance 16-20 with discriminatory intent and because of the disability of Brighton's residents, and (2) evidence giving rise to a "reasonable inference" that the City would have treated a non-disabled applicant differently. Brighton requires additional time to discover this evidence, which is currently in the possession of the City, and as such, Brighton's Motion should be granted.

And finally, the City filed its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment ("**Motion for Summary Judgment**") before any discovery had taken place and several months before the discovery deadline. Incredibly, the City argues that Brighton has been dilatory in pursuing expert discovery without any facts or law to support this claim.

If the Court determines not to deny the Motion for Summary Judgment outright, it should, at minimum, hold its ruling in abeyance until after Brighton has pursued the discovery outlined in its Motion to enable it to respond to the Motion for Summary Judgment.

## ARGUMENT

Brighton is entitled to additional time to conduct the discovery necessary to support its claims and sufficiently respond to the City's Motion for Summary Judgment. Further, Brighton is entitled to proffer evidence beyond the administrative record that the Ordinance violates the ADA, FHA, and RA, which evidence will be gathered during the additional time Brighton is requesting to conduct necessary discovery.

4842-8088-1286

I.     **Brighton is Entitled to Conduct Discovery Related to the City's Discriminatory Intent Because Intent is Directly at Issue in this Case.**

The City cites a series of soundbites from inapposite case law in support of its position that discovery related to legislative intent cannot be conducted. *See* Opposition p. 1-4. Of the ten cases the City uses to support its position, only one case—*Bryant Woods Inn, Inc. v. Howard County*—actually addresses a Fair Housing Act claim, and *Bryant* does not stand for the proposition that discovery related to legislative intent cannot be propounded. The rest of the cases cited address the constitutionality of certain statutes and ordinances and are easily distinguishable. Brighton is not challenging the constitutionality of Ordinance 16-20. Rather, Brighton claims that Ordinance 16-20 violates the ADA, FHA, and RA because it discriminates against people with disabilities.

In raising a disparate treatment claim, Brighton is *obligated* to prove discriminatory intent. *See Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 920 (10th Cir. 2012) (A plaintiff "bears the obligation of coming forward with a prima facie case of discrimination, a case that must include evidence suggesting the city denied the variance because of the disability of [plaintiff's] residents."). "The ultimate question in a disparate treatment case is whether the defendant intentionally discriminated against plaintiff." *Honce v. Vigil*, 1 F.3d 1085, 1088 (10th Cir.1993).

A prima facie case of discrimination may be established if the plaintiff provides evidence that "animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Turner v. City of Englewood*, 195 F. App'x 346, 353 (6th Cir. 2006). The circumstantial evidence of discriminatory intent may be inferred from the "totality of circumstances" from several sources, including: "the historical background of the decision, the specific sequence of events leading up to the challenged decision, departures from the normal procedural sequence, and the legislative history and contemporary statements by members of the

decision-making body." *Id.* at 354.  Thus, Brighton is entitled to conduct discovery on the City's intentions in passing the Ordinance because discriminatory intent is directly at issue and evidence of such intent must be proffered.

The City cites *Ranch House, Inc. v. Amerson* for the proposition that "a court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."  Opposition at p. 2.  In quoting only the first sentence of footnote 5, the City mischaracterizes the court's actual position.  Footnote 5 states in its entirety:

> It is well established that a court will not "'strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.'" *Renton,* 475 U.S. at 48, 106 S.Ct. at 929 (citation omitted). **That principle does not relieve the Defendants [Calhoun County Sheriff and the Calhoun County Commission] of their burden of demonstrating that § 200.11 was enacted for the purpose of combating secondary effects . . . [and not for an unconstitutional purpose].**

*Ranch House, Inc. v. Amerson*, 238 F.3d 1273 n.5 (11th Cir. 2001) (emphasis added).

*Ranch House* is inapposite because, among other reasons, the court's legal analysis addresses the constitutionality of a law that violated the First Amendment rights of an adult-entertainment establishment.  *See generally Ranch House, Inc.*, 238 F.3d 1273.  However, despite the obvious distinctions between *Ranch Hill* and this case, the court in *Ranchi Hill* determined that the record did not include sufficient evidence demonstrating the legislature's intent in enacting the statute at issue and therefore remanded the case for further factfinding. The court explained:

> In determining whether the purpose of a law is to suppress protected speech, a court may examine a wide variety of materials, including the text of the statute, any preamble or express legislative findings associated with it, legislative history, and studies and information of which legislators were clearly aware. *See, e.g., Colacurcio v. City of Kent,* 163 F.3d 545, 552 (9th Cir.1998) ("We will look to the full record to determine whether

4

> evidence indicates that the purpose of the ordinance is to suppress speech or ameliorate secondary effects. In so doing, ***we will rely on all 'objective indicators of intent***, including the face of the statute, the effect of the statute, comparison to prior law, facts surrounding enactment, the stated purpose, and the record of proceedings.'" (citation omitted)), *cert. denied,* 529 U.S. 1053, 120 S.Ct. 1553, 146 L.Ed.2d 459 (2000).

*Ranch House,* 238 F.3d at 1280 (emphasis added). The court further reasoned:

> [B]efore an enactment of the Alabama Legislature is struck down, we think attorneys representing the State of Alabama should be given an opportunity to be heard. . . . [W]e are reluctant to consider invalidating this statute without affording the State another chance to become directly involved. ***We therefore remand this case to afford the Defendants (and the State of Alabama, if it chooses to participate) an opportunity to develop a foundation for their claim that the statute's purpose was to combat secondary effects.***

*Id.* at 1284 (emphasis added).

Like *Ranch House*, the *City of Renton v. Playtime Theatres, Inc.* adjudicated the constitutionality of an ordinance that allegedly violated the First Amendment rights of an adult-entertainment establishment. *See generally City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48, 106 S. Ct. 925, 929, 89 L. Ed. 2d 29 (1986). As a threshold matter, the holding in *Renton* has been widely distinguished by other courts and has no application to the Fair Housing Act or the analysis to be applied in FHA cases. Even still, the holding in *Renton* does not universally prohibit discovery related to legislative intent. The district court, in fact, considered evidence regarding the legislative body's intent in passing the zoning ordinance at issue. *See City of Renton*, 106 S. Ct. 925, 929, 89 L. ("The District Court's finding as to 'predominate' intent, left undisturbed by the Court of Appeals, is more than adequate to establish that the city's pursuit of its zoning interests here was unrelated to the suppression of free expression.").

In further support of its position that discovery related to legislative intent cannot be propounded, the City cherry picks seemingly helpful soundbites from an order prohibiting

5

discovery related to intent in *Utah Republican Party v. Herbert*. *See* Opposition at p. 3. Like *Ranch House* and *Renton*, the court's legal analysis in *URP v. Herbert* is inapposite as *Herbert* does not address any of the statutes applicable in this case or discrimination in general. Rather, the URP filed suit against Utah's governor and lieutenant governor, raising claims related to allegations that Senate Bill 54 was unconstitutional and constituted trademark infringements against the URP. *See Utah Republican Party v. Herbert*, 141 F. Supp. 3d 1195, 1197 (D. Utah 2015).

Next, the City cites *Bryant Woods Inn, Inc. v. Howard County* for the proposition that "[l]and use planning and the adoption of land use restrictions constitute some of the most important functions performed by local government[,]" and "[i]n enacting the FHA, Congress clearly did not contemplate abandoning the deference that courts have traditionally shown to . . . local zoning codes." Opposition at p. 3. *Bryant* is easily distinguishable from this case because the petitioner in *Bryant* seeking a reasonable accommodation did not have the property or infrastructure necessary to support the requested expansion. That is not the case here.

> Bryant Woods Inn argues in this case that its requested zoning variance is reasonable because the expansion of its group home would not increase traffic congestion since its residents do not drive. Unrefuted testimony, however, was presented to the Howard County Planning Board by a member who observed vehicles parked 'all over the place and also in the driveway' even under Bryant Woods Inn's current level of occupancy. The board also received unrefuted evidence that Bryant Woods Inn's wedge-shaped parcel affords minimal frontage and that the parcel is less than one-third of the size of other Howard County group homes which have 15 residents. Following a full public hearing where the board heard the evidence of all parties, the board found that 'even the existing use generates parking congestion on the street. This situation would be exacerbated by Petitioner's proposed expansion.'

*Bryant Woods Inn, Inc.*, 124 F.3d at 604–05.

The City cites *Sensations, Inc. v. City of Grand Rapids* for the proposition that "courts should not be in the business of second-guessing fact-bound empirical assessments of city planners." Opposition at p. 3-4.  Like *Ranch House* and *Renton*, *Sensations* adjudicated the constitutionality of an ordinance that allegedly violated the First Amendment rights of an adult-entertainment establishment and is therefore inapposite.  *See generally Sensations, Inc. v. City of Grand Rapids*, Nos. 106-CV-300, 4:06-CV-60 (W.D. Mich. October 23, 2006).  *Sensations* stands for the proposition that municipal conclusions will be upheld when based on reasonable inferences from fact-bound empirical assessments.  *Id.*  In *Sensations*, the ordinance at issue, "adopt[ed] and incorporate[d] its findings and legislative record related to adverse secondary effects of sexually oriented businesses, including 32 judicial opinions and a number of supporting reports."  *Id.*  "The legislative record also include[d] a series of affidavits by investigator Tim Reilly, recording his observations at numerous sexually oriented businesses, including . . . Sensations."  *Id.*  In the ordinance at issue,

> [T]he Grand Rapids City Commission made specific findings that sexually oriented businesses 'are often associated with a wide variety of adverse secondary effects including . . . personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation.

*Id.*

The City has offered no evidence that it reasonably relied on a fact-bound empirical assessment like the one in *Sensations* when it enacted Ordinance 16-20.

The City incorrectly cites *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*[1] for the proposition that "the Supreme Court has cautioned that review of discriminatory intent

---

[1] While MHDC raised a claim under the Fair Housing Act against the Village of Arlington Heights, the Court of Appeals failed to address the FHA claim. For this and other reasons, the Supreme Court reversed and remanded the appellate court's decision. The Supreme Court explained: "Respondents' complaint also alleged that the refusal to rezone violated the Fair Housing Act . . .. The Court of Appeals, however, proceeding in a somewhat unorthodox fashion, did not decide the statutory question. We remand the case for further consideration of respondents' statutory

should be limited to the decisionmakers' 'contemporary statements' found in the 'legislative or administrative history'[.]" Opposition at p. 4.  As a threshold matter, *Arlington Heights* has been widely distinguished by other courts, and the case on which the holding largely relies—*Washington v. Davis*, 426 U.S. 229 S.Ct. 2040, 48 L.Ed. 2d 597 (1976)—was superseded by *Veasey v. Perry*, 29 F. Supp. 3d 896, 899 (S.D. Tex. 2014).

In *Arlington Heights*, Metropolitan Housing Development Corporation ("MHDC"), a non-profit developer, filed suit against the Village of Arlington Heights for its refusal to rezone several acres of land from a single-family dwelling to a multi-family dwelling classification to allow for the construction of a low and moderate-income housing development, including 190 townhomes.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 254–55, 97 S. Ct. 555, 557–58, 50 L. Ed. 2d 450 (1977).

The Supreme Court ultimately determined that MHDC "failed to carry their burden of proving that discriminatory purpose was a motivating factor in the Village's decision," *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270–71, 97 S. Ct. 555, 566, 50 L. Ed. 2d 450 (1977), because "[t]he evidence [did] not necessitate a finding that Arlington Heights administered [its] policy in a discriminatory manner." *Id.* at 565.  However, the Court made it clear that, "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.* at 563.  Moreover, in addressing "judicial deference" to legislative bodies when discrimination is alleged, the Supreme Court explained:

> [I]t is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality. But racial discrimination is ***not*** just another competing consideration. ***When there is proof that a discriminatory purpose has been a motivating factor in the***

---

claims." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 271, 97 S. Ct. 555, 566–67, 50 L. Ed. 2d 450 (1977).

> *decision, this judicial deference is no longer justified."*

*Id.* (emphasis added).

The Court further stated:

> Determining whether invidious discriminatory purpose was a motivating factor *demands a sensitive inquiry into such circumstantial and direct evidence of intent* as may be available. . . . Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face. [Citation omitted].

*Id.* at 564 (emphasis added).

According to the Supreme Court, a review of any "[d]epartures from the [zoning board's] normal procedural sequence might afford evidence that improper purposes are playing a role." *Id.* at 565. "Substantive departures too may be relevant, particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached." *Id.* Such factors cannot be identified absent discovery. In its final point, the Court acknowledged that "MHDC called one member of the Village Board to the stand at trial. [And] [n]othing in her testimony support[ed] an inference of invidious purpose."[2] *Id.* at 566.

Despite the City's assertion that *Powers v. Harris* is "sufficiently analogous" to *Arlington Heights*, (Opposition at p. 4), *Powers* addresses the constitutionality of the Oklahoma Funeral Services Licensing Act. *See Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004). Like *Ranch House*, *Renton*, and *Sensations*, *Powers* offers no guidance on how this Court should treat discovery related to legislative intent in the context of an alleged violation of the ADA, FHA, or RA.

Here, discriminatory intent is directly at issue. As such, "judicial deference" in favor of upholding Ordinance 16-20 is not justified. Rather, "a sensitive inquiry into such circumstantial

---

[2] The City cited *Arlington Heights*, footnote 18, for the proposition that putting a municipal decisionmaker on the stand should be avoided despite the fact that a Village board member testified at trial. *See* Opposition at p. 4.

9

and direct evidence of intent" must be conducted. Thus, Brighton should be permitted to propound discovery related to the City's intent in enacting Ordinance 16-20.

## II. Brighton Can Establish Disparate Treatment Via Evidence of Discriminatory Intent in the Passing of Ordinance 16-20.

The City claims that the only way Brighton can prove its claims is to show "there is a housing disparity or disparate treatment between groups of handicapped persons and groups of unrelated handicapped persons." Opposition at p. 5. However, this misconstrues the law and overstates Brighton's burden for proving discriminatory intent.

In *Cinnamon Hills*, the 10th Circuit announced the rule that a prima facie case of discrimination "must include evidence suggesting the city [took action] *because of* the disability" of the plaintiff. *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 920 (10th Cir. 2012)(emphasis in original). *Cinnamon Hills* differs from the present case on a key issue – in *Cinnamon Hills* the Plaintiff argued that the discriminatory action was the denial of a variance. In the present case, however, the discriminatory actions also included the City passing Ordinance 16-20 itself, which issue was not before the court in *Cinnamon Hills*.[3] Where, as here, the City passed an allegedly neutral ordinance with the sole purpose of excluding the disabled in general, and Brighton in particular, from residential zones, a prima facie standard must address discriminatory intent ***in the passing of the ordinance***, as well as in denying the reasonable accommodation request. Under U.S. Supreme Court jurisprudence, the City's rule is too narrow to be the only possible method for proving discriminatory intent; the prima facia standard for showing discriminatory intent is a much lower bar and much more flexible than the City admits and must include the fact situation about which discrimination is alleged.[4]

---

[3] In the case of *Schwarz v. City of Treasure Island*, cited by both the City and the *Cinnamon Hills* decision, the 11th Circuit acknowledged that "[t]he analysis might have been different if [Plaintiff] claimed that the City enacted the occupancy-turnover rule in order to discriminate against people with disabilities." 544 F.3d 1201, 1217 (11th Cir. 2008).

[4] See, e.g., *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous"); *Swierkiewicz v. Sorema N. A.*, 534

Here, in compliance with the rule from *Cinnamon Hills*, Brighton maintains that the city passed Ordinance 16-20 "*because of* the disability" of the disabled in general, and Brighton's residents in particular. Brighton must be allowed time to conduct discovery regarding the City's discriminatory intent in passing Ordinance 16-20. The case of *Pacific Shores Properties, LLC v. City of Newport Beach* is instructive on this point. 730 F.3d 1142 (9th Cir. 2013). In that case, the Ninth Circuit held that there was a genuine issue of material fact as to whether a facially neutral ordinance passed by the city of Newport Beach, California, was "motivated by the desire to discriminate against the disabled." *Id.* at 1162. The Court looked to "[a]ll of the circumstances surrounding the enactment of the Ordinance," including the legislative history, statements by city councilmembers, and the political climate in the city. *Id.* The Ninth Circuit ultimately found that it was a question for the jury as to whether "the primary purpose of the Ordinance was to shut down group homes and prevent new ones from opening in Newport Beach, but to do so in facially neutral terms to avoid invalidation by a court." *Id.* at 1163.

Just as in *Pacific Shores Properties*, Brighton is entitled to discovery regarding the circumstances surrounding the enactment of Ordinance 16-20, including the legislative history and depositions of City administrators and officials, in order to provide evidence that the Ordinance was "motivated by a desire to discriminate against the disabled." *See also Caron Found. of Fla., Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353, 1371–72 (S.D. Fla. 2012) (in evaluating disparate treatment claim of , Court relied on discriminatory comments, "sequence of events and administrative history" to determine whether city had discriminatory intent in passing zoning law).

Finally, *Cinnamon Hills* provided for an alternative method of proving discriminatory

---

U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (*quoting Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978))("the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic'"). In the discrimination cases in the 10th Circuit, "the prima facie case is a flexible standard that may differ according to differing fact situations." *Mohammed v. Callaway*, 698 F.2d 395, 398 (10th Cir. 1983).

intent regarding the denial of a variance if there are no similarly situated non-disabled applicants. A plaintiff may also meet its burden by putting forth evidence that "the circumstances surrounding the denial of the variance support a reasonable inference that the city would have granted to an applicant without disabilities the relief it denied" plaintiff.  *Cinnamon Hills*, 685 F.3d at 920.  Here, Brighton has not yet had the opportunity to discover whether there are other non-disabled applicants that have been granted a reasonable accommodation.  Even if there are no such non-disabled applicants, Brighton is still entitled to obtain discovery on "the circumstances surrounding the denial of the variance" that show that the City would have treated a non-disabled group differently.  Evidence of bias and discriminatory intent on the part of City officials, administrators, and involved citizens would serve to "support a reasonable inference" that the City would treat a non-disabled applicant differently than it treated Brighton, and without this evidence, Brighton is unable to fully and properly respond to the City's Motion for Summary Judgment.

**III.     Whereas Fact and Expert Discovery are Months from Closing, Brighton has Not Been Dilatory in Seeking Discovery on its Disparate Impact Claims.**

The City has not, and indeed cannot, cite to a single case in which a party was deemed dilatory in seeking discovery on its claims where the discovery deadline was still months away.

In the present case, the City filed its Motion for Summary Judgment 3.5 months after the parties had exchanged initial disclosures and before any discovery has taken place.  Incredibly, the City argues that Brighton has been dilatory in seeking discovery on the issue of expert testimony relating to the statistical disparity caused by Ordinance 16-20.  Opposition at p. 6-7. Pursuant to the Scheduling Order, Brighton is not required to disclose the identity and subject of its experts until April 8, 2019 and is not required to disclose any expert reports until April 30, 2019.  The City attempts to create delay where there is none by calculating the months of Brighton's alleged inactivity starting when the Complaint was filed.  However, the City did not

file its Answer until nine months after the Complaint was filed; as such, Brighton should not be portrayed as dilatory by failing to secure expert testimony during the nine months its Complaint went unanswered. The City filed its Motion for Summary Judgment less than five months after filing its Answer, and Brighton could not have been expected to secure expert testimony before fact discovery was complete, and it is undisputed that the parties have not yet engaged in any fact discovery beyond the initial disclosures.

The City complains that it "shouldn't be forced to endure the needless expense of waiting out the discovery period" (Opposition at p. 7), without giving any reason why Brighton should be deprived of the time afforded to it for securing expert testimony under the Scheduling Order. Rule 56(d) only requires that Plaintiff "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Brighton's Motion and the attached affidavit do precisely that by explaining that the case is in its infancy, the parties have not conducted any discovery, and Brighton requires expert testimony regarding statistical disparity caused by Ordinance 16-20 in order to prove its claims. *See, e.g. USB Bank USA v. Mullins*, No. 2:08-CV-814 TS, 2010 WL 3362866, at *1 (D. Utah Aug. 23, 2010) (granting additional time for discovery where "[i]t is early in this case, there has been no discovery and it appears that Defendant requires discovery.")

## IV.    Whether The Accommodation Requested by Brighton Was Reasonable and Necessary Cannot Be Decided on Summary Judgment.

While Brighton acknowledges that a review of its reasonable accommodation request is limited to the administrative record, Brighton disagrees that reasonable accommodation claim can be decided on summary judgment. "[W]hether an accommodation is reasonable in a given circumstance is ordinarily a question of fact to be decided by the fact finder." *Tabura v. Kellogg USA*, 880 F.3d 544, 555 (10th Cir. 2018); *see also Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1122 (10th Cir. 2004). As explained it its Opposition to the City's Motion for Summary

Judgment, the record in this case creates a genuine issue of material fact as to whether Brighton's requested accommodation is reasonable and necessary.

## CONCLUSION

Brighton respectfully requests that the Court deny or continue its decision on the City's Motion for Summary Judgment and permit Brighton to conduct the necessary discovery to prove its claims.

DATED this 5th day of February 2019.

**Snell & Wilmer L.L.P.**

  /s/ Timothy J. Dance
Timothy J. Dance
Kristen J. Overton
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2019, I caused a true and correct copy of the foregoing to be served by electronic court filing notification through the Court's CM/ECF system to all participants of record.

                                                         /s/ *Sarah Nielsen*

4842-8088-1286