IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RECOVERY LANDHOLDINGS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SOUTH OGDEN, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S 56(d) MOTION, GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING AS MOOT STIPULATED MOTION TO STAY DISCOVERY <br><br> Case No. 1:17-CV-152 TS <br><br> District Judge Ted Stewart |

This matter is before the Court on Defendant City of South Ogden's ("City") Motion for Summary Judgment, on Plaintiff Recovery Land Holdings, LLC's ("Brighton") Alternative Rule 56(d) Motion, and on the Stipulated Motion to Stay Discovery. For the reasons discussed below, the Court grants Brighton's Rule 56(d) Motion and grants in part and denies in part the City's Motion for Summary Judgment. Additionally, the Court will not address the Stipulated Motion to Stay Discovery as it is rendered moot at the issuance of this order.

I. BACKGROUND

Plaintiff Brighton operates a residential facility for people recovering from alcoholism and substance abuse located in South Ogden, Utah. Brighton's facility is located in an R-1-10 residential zoning district. South Ogden City Code § 10-14-21 prohibited all "Group Living Arrangements" ("GLA") in the City's R-1-10 Residential Zoning District. The Code defines a GLA as "[a] group living or congregate living arrangement where groups of more than four (4)

1

unrelated persons live together in a single dwelling or housekeeping unit."[1] The definition of GLAs includes a Residential Facility for Disabled Persons ("RFDP").[2] A RFDP is "[a] residence in which no more than eight (8) Disabled Persons reside."[3] At the time Brighton filed this suit, a different provision of the City Code, § 10-7A-1, provided that RFDPs were a permitted use in R-1-10 zones. Despite this discrepancy between the two provisions, there is no dispute that Brighton has been permitted to and continues to operate its facility in an R-1-10 zone. Of note, it appears the South Ogden City Code sections creating the discrepancy have since been changed and the discrepancy has been resolved. Read in conjunction, §§ 10-7A-2 and 10-14-21 now clearly allow for RFDPs in R-1-10 zones.[4]

On June 13, 2014, Brighton received an accommodation from the City allowing up to twenty patients at its facility. Later, on December 6, 2016, the City adopted Ordinance 16-20, amending certain provisions of the City's zoning code. Relevant here, Ordinance 16-20 added the definition for GLAs, restricted GLAs to certain zoning districts, and banned any GLA within a 2,640-foot radius of any other GLA. Additionally, Ordinance 16-20 increased the number of disabled persons who could live together in an RFDP to eight, as opposed to the four-person cap on nondisabled individuals living together.

On March 10, 2017, without knowledge of the amended provisions, Brighton filed an application with the City for a reasonable accommodation to allow Brighton to provide treatment

---

[1] SOUTH OGDEN CITY, UT., CODE § 10-2-1.

[2] *Id.*

[3] *Id.*

[4] *See id.* § 10-7A-2 (permitting residential facilities for disabled persons (RFDPs) in R-1-10 zones); *id.* § 10-14-21 (GLAs are prohibited where not expressly permitted within a zone).

2

for up to thirty-two people. After learning of the 2016 adoption of Ordinance 16-20, Brighton supplemented its reasonable accommodation application on April 18, 2017, seeking accommodation from the City's Section 10-14-21 prohibition of GLAs in R-1-10 zones and from the eight-person cap for RFDPs under Section 10-2-1.

The City's Accommodation Review Committee ("ARC") denied Brighton's application on May 17, 2017, explaining that 1) the accommodation was not necessary to achieve an equal housing opportunity for Brighton's residents within the meaning of the Fair Housing Act; and 2) granting the accommodation would not be reasonable as it would be a fundamental departure from the current land use and zoning programs. Brighton appealed that decision to a Hearing Officer about two months later. On August 30, 2017, the Hearing Officer denied the appeal, explaining that under the requirements of the Fair Housing Act, the accommodation was not necessary.

Brighton brought this action on September 29, 2017. Brighton brings claims under the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). Brighton advances three theories of liability under these provisions: (1) disparate treatment discrimination; (2) disparate impact discrimination; and (3) failure to grant a reasonable accommodation. Defendant City subsequently filed its Motion for Summary Judgment, and Brighton has responded with a Rule 56(d) Motion requesting time to complete discovery.

## II. RULE 56(d) MOTION

The Court first addresses Plaintiff's Rule 56(d) Motion. Federal Rule of Civil Procedure 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the

motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[5]

The party requesting additional discovery must present an affidavit that identifies "the probable facts not available and what steps have been taken to obtain these facts. The nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact."[6] "The general principle of Rule [56(d)] is that 'summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'"[7] "Unless dilatory or lacking in merit, the motion should be liberally treated."[8]

Here, Brighton argues that it needs to conduct further discovery to fully and completely respond to the City's Motion. Brighton states that it requires at least the following evidence:

a. Testimony of South Ogden City Council members, Planning Commissioners, city employees, and citizens involved in the approval of the Ordinance relating to the historical background of the decision, the specific sequence of events leading up to the challenged decision, departures from the normal procedural sequence, and the legislative history and contemporary statements by members of the decision-making body, which testimony will provide probable evidence of direct or indirect discrimination;
b. Relevant emails, communications, memoranda, notes, or other documents in the possession, custody, or control of City Council, Planning Commission members, city administrators, and citizens relating to the Ordinance, from both work and personal email accounts and correspondence;

---

[5] FED. R. CIV. P. 56(d).

[6] *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006) (brackets, citation, and internal quotation marks omitted).

[7] *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)) (alterations in the original).

[8] *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (internal quotation marks and citation omitted).

  c. Evidence of other reasonable accommodation requests under the Ordinance or its predecessor;
  d. Expert testimony regarding statistical evidence of the disparate effect the Ordinance has had on the handicapped population.[9]

The City makes four arguments against Brighton's request. First, the City argues that Brighton is not entitled to discovery on any alleged insidious motives or intent. Second, and relatedly, the City argues that discovery will not help Brighton avoid summary judgment. Third, the City argues that Brighton has been dilatory and, therefore, its request should be denied. Finally, the City argues that Brighton is not entitled to discovery on its failure-to-accommodate claim.

As to the City's first argument, the City essentially argues that the Court cannot look beyond the language of the Ordinance and its accompanying legislative history to determine whether there is evidence of disparate treatment. To support this argument, Defendant points to cases addressing challenges to the constitutionality of a statute. In those cases, courts have held that they "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."[10]

In this case, however, Brighton's disparate treatment claim does require a showing of intentional discrimination. This can be done through direct evidence—such as a policy maker making "discriminatory comments about the disabled while explaining his basis for the contested decision"—or circumstantial evidence—where Brighton "must produce evidence suggesting that the city denied to it zoning relief granted to similarly situated applicants without disabilities"[11] or

---

[9] Docket No. 30-1 ¶ 13.

[10] *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986) (internal quotation marks and citation omitted).

[11] *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 920 (10th Cir. 2012).

"that the city would have granted to an applicant without disabilities the relief it denied" Brighton.[12] Additionally, support for a disparate impact claim "is generally shown by statistical evidence . . . involv[ing] the appropriate comparables necessary to create a reasonable inference that any disparate effect identified was caused by the challenged policy and not other causal factors."[13] This is the type of evidence requested in Brighton's Rule 56(d) Motion. Thus, the City's first argument must be rejected. Perhaps Brighton may not be entitled to all of the discovery that it seeks, but that does not mean that it is barred from discovery altogether.[14] Furthermore, the instant Motion is not the proper place to determine the limits, if any, to be placed on discovery.

The City's second argument relates to the first. In sum, the City argues that any quantum of evidence will be insufficient to avoid summary judgment. However, without conducting the necessary discovery, it is impossible to make this determination. Once discovery has taken place, the parties and the Court will be in a better position to evaluate whether the evidence is sufficient to avoid summary judgment. Therefore, the City's second argument also fails.

Third, the City argues that Brighton has been dilatory with respect to its disparate impact claim. Disparate impact claims are generally shown by statistical data, as has been explained.[15] To this point, it appears that Brighton has failed to produce any statistical data to support its claim, though it has long claimed that Ordinance 16-20 disproportionately affects the disabled.

---

[12] *Id.* at 920.

[13] *Id.* at 922 (internal quotation marks and citation omitted) (alteration in the original).

[14] *See generally* FED. R. CIV. P. 26(b) ("Parties may obtain discovery regarding any *nonprivileged matter* that is *relevant to any party's claim or defense* and *proportional to the needs of the case* . . . .") (emphasis added).

[15] *Cinnamon Hills*, 685 F.3d at 922.

While a close call, the facts of this case do not demonstrate that Brighton has been dilatory. Brighton filed its Complaint in September 2017. However, the parties sought and received several extensions to explore possible ways of resolving this dispute short of litigation. Thus, the City's Answer was not filed until June 2018, and a Scheduling Order was only entered in July 2018. The City filed its Motion for Summary Judgment just four months later. Under the terms of the Scheduling Order, discovery has yet to close.[16] While Brighton potentially could have been more diligent in marshaling the evidence necessary to support its claim, it cannot be faulted for failing to complete discovery months before the agreed-upon discovery deadline.

Finally, the City argues that Brighton is not entitled to discovery on its failure-to-accommodate claim because the Court's review of that claim is limited to the administrative record. The City is correct in this regard and Brighton agrees that the Court's review is limited to the administrative record.[17] Thus, no further discovery is necessary as to this claim and it is ripe for decision. While Brighton argues that there are material facts that require a denial of summary judgment as to that claim, the Court will grant the City's Motion for Summary Judgment on Brighton's failure-to-accommodate claim for the reasons discussed below.

### III. REASONABLE ACCOMMODATION

---

[16] Discovery closes in its entirety on August 30, 2019. *See* Docket No. 24, at 3.

[17] *See Keys Youth Servs., Inc. v. City of Olathe*, 248 F.3d 1267, 1275–76 (10th Cir. 2001) (Tenth Circuit only considered the evidence, or lack thereof, presented to the City by Keys to demonstrate a need for an accommodation); *see also Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Township of Scotch Plains*, 284 F.3d 442, 451 (3d Cir. 2002) (citing *Keys*, and joining the Tenth Circuit in "holding that courts hearing reasonable accommodations challenges should ordinarily limit their review to the administrative record").

Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling."[18] "[T]he statute requires accommodations that are necessary (or indispensable or essential) to achieving the objective of equal housing opportunities between those with disabilities and those without."[19] "But while the FHA requires accommodations necessary to ensure the disabled receive the same housing opportunities as everybody else, it does not require more or better opportunities."[20] Thus, "when there is no comparable housing opportunity for non-disabled people, the failure to create an opportunity for disabled people cannot be called necessary to achieve equality of opportunity in any sense."[21] For example, "a city need not allow the construction of a group home for the disabled in a commercial area where nobody, disabled or otherwise, is allowed to live."[22] The reasonable accommodation mandate requires "changes in otherwise neutral policies that preclude the disabled from obtaining "the *same . . . opportunities* that those without disabilities automatically enjoy."[23]

Further, courts have been reluctant to ride roughshod over local zoning codes, but "must resolve the necessary tension between a municipality's right to control land uses through neutral regulation, and its duty to make reasonable accommodation for the handicapped under the Act."[24]

---

[18] 42 U.S.C. § 3604(f)(3)(B).

[19] *Cinnamon Hills*, 685 F.3d at 923.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* (internal quotation marks and citations omitted).

[24] *Corp. of Episcopal Church v. W. Valley City*, 119 F. Supp. 2d 1215, 1220–21 (D. Utah 2000).

Likewise, it was not the intent of Congress to gut local government power and functions when it enacted the FHA.[25] Rather, "Congress require[s] only that local government make 'reasonable accommodation' to afford persons with handicaps 'equal opportunity to use and enjoy' housing in those communities."[26]

Here, Brighton posits that this Court's analysis of Brighton's reasonable accommodation claim should be based upon a reasonable accommodation "market-necessity" analysis, contending that this Court's decision in *Corporation of Episcopal Church v. West Valley City* addressing a failure to accommodate claim was based upon such an analysis. In *Episcopal Church*, the plaintiffs requested an accommodation to build an alcohol and drug rehabilitation home in an area of the city that had previously barred living situations such as "detention facilities, half-way houses, alcohol rehabilitation centers, and other similar uses."[27] The plaintiffs contested that there was a need for such facilities in the area to provide rehabilitation services to individuals overcoming addiction.[28] This Court noted that the record showed a "shortage of such treatment facilities in the Salt Lake Valley," and that there was a need for a treatment facility in the area of West Valley City.[29]

However, although mentioned by this Court, the fact that there was not a group home in the area and that perhaps one would have been useful was not the basis of this Court's decision. Rather, this Court highlighted that the City had "made no attempt to accommodate this facility,"

---

[25] *Id.*

[26] *Id.* (quoting 42 U.S.C § 3604(f)(3)(B)).

[27] *Id.* at 1217 (quoting the West Valley City Land Use Act).

[28] *Id.*

[29] *Id.*

9

and indeed "the decision was made to deny the permit for the facility before the application was even received."[30] Therefore, contrary to Brighton's position, the decision of this Court in that case hinged on the fact that West Valley City had made "no attempt to accommodate" the rehabilitation facility, and not because there was an acknowledged need for group living for those recovering from addiction.[31]

To the extent an interpretation of *Episcopal Church* could be stretched to endorse a market-necessity approach, the Tenth Circuit rejected that mode of analysis for a reasonable accommodation claim under the FHA in *Cinnamon Hills*. Consequently, and contrary to what Brighton contends, a reasonable accommodation analysis of necessity as adopted by the Tenth Circuit is not based upon a "market-necessity." Rather, "the object of the statute's necessity requirement is a level playing field in housing for the disabled."[32]

In *Cinnamon Hills*, the plaintiff argued that "an accommodation should be held 'necessary' anytime it would 'provide [] direct amelioration of a disability's effect.'"[33] In other words, the plaintiff contended that accommodation was "'necessary' because it would ease the transition of emotionally and mentally troubled youth from residential treatment back into society."[34] The Tenth Circuit referred to this argument as a request to "adopt an entirely different and more lenient legal standard" than that required under the FHA, explaining that the FHA standard establishes that an accommodation is necessary to "afford [a disabled] person equal opportunity to use and

---

[30] *Id.* at 1221.

[31] *Id.* at 1222.

[32] *Cinnamon Hills*, 685 F.3d at 923.

[33] *Id.* at 924.

[34] *Id.*

10

enjoy a dwelling."[35] The Tenth Circuit further explained that an "amelioration" approach disregards the language of the FHA "linking a defendant's accommodation obligations to the goal of providing 'equal opportunity to enjoy a dwelling.'"[36] Adhering to the analysis of necessity of equal housing opportunities rather than necessity to ameliorate a disability, the Tenth Circuit has rejected market-necessity or amelioration analyses, and so must this Court.

Brighton has been unsuccessful in demonstrating that its requested accommodation is necessary under the FHA. Here, Brighton argues that its accommodation is necessary to give disabled people the equal opportunity to live in residential neighborhoods. This argument, however, fails to recognize that City Code § 10-7A-1 specifically allows RFDPs in R-1-10 zones. Brighton's actual request seeks to increase the number of residents at its facility from twenty to thirty-two. Like the plaintiffs in *Cinnamon Hills* and *Episcopal Church*, to support its request, Brighton points generally to the need for treatment opportunities for those recovering from substance abuse addiction. Brighton states that "there are approximately 9,692 adults in Weber County with substance abuse disorders who are not treated in the public system."[37] However, Brighton has not pointed to any evidence that all of these individuals require treatment in residential group settings, nor has it provided evidence that such treatment must occur in groups of thirty-two as opposed to twenty. Also like the plaintiffs in *Cinnamon Hills* and *Episcopal Church*, even if Brighton had done so, such evidence would likely not be of paramount importance

---

[35] *Id.* at 923 (quoting 42 U.S.C. § 3604(f)(3)(B)).
[36] *Id.* at 924.
[37] Docket No. 29, at 17.

11

to the FHA analysis requiring a showing that the accommodation would better provide to Brighton's residents equal opportunity to enjoy a dwelling.

Additionally, Brighton is not requesting the same opportunity enjoyed by those without disabilities. Instead, Brighton is requesting something, a group of thirty-two unrelated individuals living together in a residential area, that is unavailable to anyone, disabled or not. There is no evidence that the City has or ever would grant a request to allow thirty-two unrelated, non-disabled people to live together in an R-1-10 zone. The FHA "does not compel" the City to provide Brighton "an opportunity that isn't available to others."[38]

Finally, in regards to the spacing restriction highlighted in Brighton's Complaint, Brighton previously acknowledged that there were no other GLAs within a 2,640-foot radius of its property.[39] Therefore, as Brighton's supplemental application noted that there were no GLAs within a 2,640-foot radius of its property, there was no need for an accommodation from the spacing restriction, nor has Brighton presented evidence that would require an accommodation under the FHA. For these reasons, Brighton's failure-to-accommodate claim does not survive summary judgement.

## IV. CONCLUSION

It is therefore

ORDERED that Brighton's Rule 56(d) Motion (Docket No. 30) is GRANTED. It is further

---

[38] *Cinnamon Hills*, 685 F.3d at 924.

[39] Docket No. 25-1, at 4; Docket No. 25-2.

ORDERED that the City's Motion for Summary Judgment (Docket No. 25) is GRANTED as to Brighton's failure-to-accommodate claim and is DENIED WITHOUT PREJUDICE in all other respects. It is further

ORDERED that the Stipulated Motion to Stay Discover (Docket No. 43) is DENIED as moot.

DATED this 4th day of April, 2019.

BY THE COURT:

_____
Ted Stewart
United States District Judge