IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RECOVERY LAND HOLDINGS, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SOUTH OGDEN, and DOE DEFENDANTS I through X,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - DISPARATE TREATMENT CLAIMS<br><br>Case No. 1:17-CV-152 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion for Summary Judgment on Plaintiff's disparate treatment claims. For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

Plaintiff Recovery Land Holdings, LLC ("Brighton") operates a residential facility for people recovering from alcoholism and substance abuse located in South Ogden, Utah. Plaintiff's facility is located in an R-1-10 residential zoning district. South Ogden City Code § 10-14-21 prohibits all "Group Living Arrangements" ("GLA") in the City's R-1-10 Residential Zoning District.[1] The definition of GLAs includes a Residential Facility for Disabled Persons ("RFDP").[2] However, a different provision of the City Code, § 10-7A-1, provides that RFDPs are a permitted use in R-1-10 zones.

---

[1] A GLA is defined as "[a] group living or congregate living arrangement where groups of more than four unrelated persons live together in a single dwelling or housekeeping unit."

[2] A RFPD is "[a] residence in which no more than eight (8) Disabled Persons reside."

1

Plaintiff previously received an accommodation from the City allowing up to 20 patients at its facility. After Brighton received its accommodation, the City adopted Ordinance 16-20, which amended certain provisions of the City's zoning code. Relevant here, Ordinance 16-20 added the definition for GLAs, restricted GLAs to certain zoning districts, and banned any GLA within a 2,460-foot radius of any other GLA. Additionally, Ordinance 16-20 increased the number of disabled persons who could live together in an RFDP to 8 people.

On March 10, 2017, Brighton filed an application for a reasonable accommodation from the City to allow it to provide treatment for up to 32 people. After learning of Ordinance 16-20, Brighton supplemented its reasonable accommodation application. In that supplement, Brighton sought accommodation from the City's prohibition of GLAs in R-1-10 zones and the 8-person cap for RFDPs.

The City's Accommodation Review Committee denied Brighton's application on May 17, 2017. Brighton appealed that decision to a Hearing Officer. On August 30, 2017, the Hearing Officer denied the appeal.

Brighton brought this action on September 29, 2017. Brighton asserted claims under the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). Brighton advanced three theories of liability under these provisions: (1) disparate treatment discrimination; (2) disparate impact discrimination; and (3) failure to grant a reasonable accommodation.

The Court previously granted summary judgment on Plaintiff's reasonable accommodation claim. Defendant now seeks summary judgment on Plaintiff's disparate treatment claim.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[4] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[5]

## III. DISCUSSION

Before addressing the merits of Defendant's Motion, the Court must address Plaintiff's claim that the Motion somehow violates the Court's prior order denying Defendant's earlier motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d). Put simply, it does not. Nothing in that prior order prevents Defendant from filing the instant Motion. Further, as is addressed more fully in the Court's Memorandum Decision and Order denying Plaintiff's Renewed Rule 56(d) Motion and Motion to Amend Scheduling Order, no further discovery will be permitted.

---

[3] Fed. R. Civ. P. 56(a).

[4] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[5] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

Turning to the merits, a disparate-treatment claim requires proof of "differential treatment of similarly situated persons or groups."[6] "There are two ways to prove intentional discrimination (or 'disparate treatment')," direct proof and circumstantial evidence.[7]

*1.     Direct Evidence*

"Direct evidence of discrimination is evidence which, if believed, proves that the decision in the case at hand was discriminatory—and does so without depending on any further inference or presumption."[8] Thus, "if a city zoning official explicitly relies on a discriminatory policy in making the challenged policy decision, or if he makes discriminatory comments about the disabled while explaining his basis for the contested decision, that is direct evidence of discrimination."[9]

There is no evidence of a city official making discriminatory comments about the disabled. Therefore, any direct evidence would have to be the result of reliance on a discriminatory policy. Brighton states that it has direct evidence of discrimination because City Ordinance 16-20 is facially discriminatory. Brighton asserts that the Ordinance 16-20 is facially discriminatory in two ways. First, Brighton argues that the Ordinance is facially discriminatory because it singles out the handicapped and applies different rules to them. Specifically, Brighton argues that Ordinance 16-20 is facially discriminatory because it places a cap on the number of

---

[6] *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995) (internal quotation marks and citations omitted).

[7] *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 919 (10th Cir. 2012).

[8] *Id.*

[9] *Id.* at 920.

4

people allowed to live in RFPDs while not placing similar caps on other GLAs. Second, Brighton argues that the Ordinance's spacing requirement for GLAs is facially discriminatory.

This argument fails because the City did not rely on these allegedly discriminatory policies when it denied Brighton's request for an accommodation. While Brighton sought accommodation from the 8-person cap and the prohibition on GLAs in R-1-10 zones, it was previously given permission to exceed that cap and was already located in an R-1-10 zone. The City has taken no action to alter these previously allowed accommodations. Moreover, Brighton's supplemental application noted that there were no GLAs within a 2,640-foot radius of its property.[10] Thus, there was no need for an accommodation from the spacing restriction.

The Accommodation Review Committee did cite to Ordinance 16-20 in its decision, but only to highlight that Brighton had requested accommodation from provisions of the City Code that were amended by that Ordinance. However, nothing in that decision relied upon the alleged offending provisions of Ordinance 16-20 in denying Brighton's request for accommodation. The same is true for the Hearing Officer.

The Tenth Circuit addressed a similar scenario in *Cinnamon Hills*. There, the plaintiff pointed to another restriction in the city code, § 10–5–3, which restricted residential treatment centers to rural areas as direct evidence in support of its claim of discrimination. However, the city never invoked this restriction when it denied the plaintiff's request for accommodation. Rather, the plaintiff's request was denied for other reasons. Because the city did not rely upon this restriction in denying the plaintiff's request, it did not constitute direct evidence of discrimination. "To use § 10–5–3 as evidence, Cinnamon Hills must rely on the inference that

---

[10] Docket No. 25-2, at 4.

whatever animus towards the disabled is evident on the face of § 10–5–3 also infected the city's decision to deny the variance request at issue. And that logical leap places the evidence squarely in the indirect proof camp."[11]

The same is true here. Brighton did not seek an accommodation from the spacing requirement and nothing in the City's decision to deny Brighton's request relied upon that restriction. Indeed, Brighton admitted that there were no other GLAs within a 2,640-foot radius of its property. While Brighton did seek relief from the 8-person restriction, the City never applied that cap to Brighton. As stated, Brighton had already received an accommodation to house 20 patients and the City has never sought to enforce the 8-person cap on Brighton. The actual limit that prevented the expansion sought by Brighton was not the 8-person cap on RFDPs, but the 4-person cap on unrelated persons contained in the definition of "family." Brighton has not challenged this definition. Moreover, Brighton was allowed to operate in an R-1-10 zone where other GLAs were excluded. Thus, to the extent that certain provisions of Ordinance 16-20 provide evidence of bias, they do not provide direct evidence of discrimination in this case.[12] "[W]hatever else [Ordinance 16-20] may be, it isn't *direct* evidence of discrimination against the disabled in *this* case."[13]

---

[11] *Cinnamon Hills*, 685 F.3d at 920.

[12] *Id.* (quoting *Ramsey v. City & Cty. of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990)) ("Because St. George did not rely upon § 10–5–3 in denying Cinnamon Hills's request, that provision can be at most 'direct evidence of . . . bias' and not 'direct evidence of discrimination.'").

[13] *Id.* at 919.

Further, any challenges to these provisions of Ordinance 16-20 are not ripe.[14] Again, the Tenth Circuit addressed a similar argument in *Cinnamon Hills*. In that case, the plaintiff worried that the city might invoke other allegedly discriminatory code provisions to deny future applications, thereby limiting its ability to expand to other locations.[15] The court found that this claim was not ripe. There, as here, the potential application of alleged offending code provisions "depends on 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[16] For example, Brighton may choose not to relocate or the City may decide to waive the challenged provisions of Ordinance 16-20. Because of this future uncertainty, the Court "need not pass upon" the validity of these provisions at this time.[17]

Even if not direct evidence of discrimination, the Court can still consider Ordinance 16-20 as circumstantial evidence. However, the mere existence of that Ordinance is insufficient to withstand summary judgment. Plaintiff "must show some causal 'nexus' between evidence of general bias like that ostensibly reflected in [Ordinance 16-20] and the challenged decision at issue in this case."[18] Plaintiff has failed to do so.

2.  *Circumstantial Evidence*

When there is no direct evidence of discrimination, courts apply "the familiar *McDonnell Douglas* burden shifting scheme originally spawned in the Title VII arena but long since equally

---

[14] *Id.* at 922 n.3.

[15] *Id.*

[16] *Id.* (quoting *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004)).

[17] *Id.*

[18] *Id.* at 921.

entrenched in the FHA, ADA, and RA contexts."[19] At the first step of that analysis, Plaintiff "bears the obligation of coming forward with a prima facie case of discrimination, a case that must include evidence suggesting the city denied the variance because of the disability of [Plaintiff's] residents."[20] To meet this burden, Plaintiff

> must produce evidence suggesting that the city denied to it zoning relief granted to similarly situated applicants without disabilities. Or, if there are no similarly situated non-disabled applicants, [Plaintiff] must show the circumstances surrounding the denial of the variance support a reasonable inference that the city would have granted to an applicant without disabilities the relief it denied [Plaintiff].[21]

Here, there is no evidence that the City denied Plaintiff relief that it granted to similarly-situated applications without disabilities. Nor is there evidence that the City would grant anyone the type of relief Brighton was denied. There is simply no evidence that the City has or would allow 32 unrelated, non-disabled people to live together in an R-1-10 zone.

To support its claim, Brighton points to the circumstances surrounding the adoption of Ordinance 16-20, which it contends show animus toward rehabilitation centers for people with disabilities. Plaintiff's interpretation of this evidence is unconvincing, but even accepting it, "evidence that neighbors and city officials are biased against recovering substance abusers is irrelevant absent some indication that the recoverers were treated differently than non-recoverers."[22] As stated, Plaintiff "must show some causal 'nexus' between evidence of general bias . . . and the challenged decision at issue in this case."[23] Plaintiff has failed to do so here.

---

[19] *Id.* at 919.

[20] *Id.* at 920.

[21] *Id.*

[22] *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216 (11th Cir. 2008).

[23] *Cinnamon Hills*, 685 F.3d at 921.

8

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 73) is GRANTED.

DATED this 16th day of December, 2019.

BY THE COURT:

_____
Ted Stewart
United States District Judge